In the

# United States District Court
for the
# Northern District of Texas

No. 5:22-CR-042
No. 5:22-CR-044

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ROSALIO AYON CORRALES,

*Defendant-Appellant.*

Appeal from No. 5:19-MJ-066
Magistrate Judge D. Gordon Bryant, Jr., *Presiding*

JAMES WESLEY HENDRIX, *District Judge*:

Rosalio Corrales was sentenced to a six-month term of probation for the misdemeanor crime of aiding and abetting an alien's unlawful entry into the United States. But Corrales absconded almost immediately, so a magistrate judge revoked his probation and issued a warrant for his arrest. After two years on the lam in California, the Marshals returned Corrales to Texas, where the magistrate judge imposed another eight-month term of probation. Corrales appeals, arguing that there is no statutory authority to both revoke his term of probation and impose further probation. The government disputes Corrales's reading of the applicable statutes but nevertheless asks the Court to vacate and remand so that the same term can be imposed under a different subsection. But the statute clearly authorizes probation after revocation. And, even if it did not, the Court would simply reform the judgment to reflect a continuation of Corrales's original term. So regardless of which subsection applies, the revocation sentence is lawful.

I.

A.

A state trooper saw Corrales speeding near Post, Texas on April 16, 2019. After stopping him, the trooper discovered three aliens in the car. All three admitted that they were trafficked into the United States from Mexico by Corrales and his associates. APPX149–150, APPX165.[*]  Corrales received around $300 for his efforts. APPX165, APPX181.

Two days after the stop, a federal criminal complaint charged Corrales with alien smuggling, a felony carrying a maximum of ten years in prison. APPX164. After negotiating with the government, Corrales pleaded guilty to one count of aiding and abetting improper entry by an alien, a misdemeanor carrying a maximum of six months imprisonment or five years of probation. APPX152–158, APPX167–68.

At sentencing, Corrales asked for time served—he had spent two months and eight days in custody pending resolution of his charge. APPX180–181. The government expressed no view on that sentence but indicated that it believed a fine was appropriate given Corrales's financial motives and means. APPX184–185.

The magistrate judge sentenced the defendant on June 24, 2019, to six months' probation, a $1,000 fine, and 40 hours of community service. APPX187–188; *see* APPX115–120 (judgment). Neither side objected to that sentence. APPX189–190. At the close of the hearing, the magistrate judge instructed Corrales to report to his probation officer in Lubbock to arrange for transfer of his supervision to his home state of California.

---

[*] The Court ordered the parties to confer and file one sequentially paginated appendix to serve as the record on appeal. Dkt. No. 2. That appendix comprises three volumes, which are found at Dkt. Nos. 7, 8, and 12. Volume 2 is sealed because it contains the Presentence Report. *See* Dkt. No. 6. All statutory citations are to title 18 unless otherwise specified.

– 2 –

APPX191–192.  Corrales did so, but when it became clear that his proposed living arrangements were unsuitable, the Officer instructed him to return the next morning to work out a solution. *See* APPX111.

Rather than return, Corrales hopped a Greyhound for Albuquerque.  APPX112.  The officer filed a petition for revocation, asking that a warrant be issued for Corrales's arrest.  APPX111–113.  The magistrate judge granted that request on June 28, 2019, four days after Corrales was sentenced.  APPX114.

### B.

More than two years later, state authorities in California arrested Corrales on unrelated charges and, after learning of the magistrate judge's warrant, transferred him to the Marshals' custody.  APPX087; APPX090; APPX108.  On November 23, 2021, he appeared before a magistrate judge in the Eastern District of California, who ordered Corrales transferred back to Texas.  APPX105–110.  Upon his return to the Northern District, the government filed a motion to revoke his probation based on his flight.  APPX103–104.

The same magistrate judge who sentenced Corrales held a revocation hearing on March 30, 2022—four months after Corrales entered the Marshal's custody.  APPX074–099.  Corrales appeared with counsel and pleaded true to the violations outlined in the government's motion.  APPX083–084.  The magistrate judge revoked the defendant's term of probation, finding that although revocation was not mandatory, it was amply justified because Corrales "made no effort to even begin his term of probation, much less substantially comply, and instead immediately fled the Court's jurisdiction."  APPX085.

The magistrate judge next turned to the issue of sentencing for the revocation.  Corrales, through counsel, asked for a sentence "according to the policy range" of three to six months' imprisonment.  APPX088.  (By that point, Corrales had spent

roughly 200 days in custody, so even a sentence at the upper end of that range would have amounted to a time-served sentence. *See* APPX088.)  But before Corrales allocuted the magistrate judge interrupted and noted that he was considering a sentence of probation.  APPX088.  The government stated that further probation was "a possibility" and confirmed that the maximum term the magistrate judge could impose was five years. APPX088–089.  Corrales made no objection to that possibility. APPX089.  The government went on to argue that a further term of probation would be inappropriate given Corrales's conduct. APPX089.  It joined Corrales in asking for a sentence within the policy statement range.  APPX089.

The magistrate judge rejected both parties' arguments and imposed a sentence of eight months' probation and a $1,000 fine (the unpaid fine from the original sentence).  APPX092.  Asked one last time if either side had "an objection or argument to the sentence," both sides answered in the negative.  APPX096.

## C.

One day before the deadline for doing so, Corrales filed a motion to correct the judgment requesting relief by the next day. APPX066–073; *see* Fed. R. Crim. P. 35(a).  The magistrate judge had clearly erred, in Corrales's view, by imposing a sentence of probation after having revoked the original term of probation. APPX069–072.  Despite having no objection to a probationary sentence at the time, *see* APPX096, Corrales now argued that the text of the revocation statute, 18 U.S.C. § 3565, precluded the reimposition of a term of probation.  Relying on the Supreme Court's opinion in *United States v. Granderson*, 511 U.S. 39 (1994), Corrales argued that, because one subsection speaks of continuing the term of probation and the other speaks of revoking probation, when a judge revokes probation, the consequence cannot be further probation.  APPX070–072.  Since further probation was impermissible and supervised release is not permitted for petty offenses like Corrales's, Corrales argued that the only

– 4 –

remedy was to impose the time-served sentence he asked for at his revocation proceeding. APPX073. At a hearing the next day, the magistrate judge denied the motion. APPX021–062. A written order confirming that ruling issued later that afternoon. APPX016–017. These timely appeals followed.

## II.

Corrales appeals from both the revocation sentence and the denial of his Rule 35(a) motion. Since both appeals turn only on the lawfulness of the sentence imposed, they can be disposed of simultaneously.

Aiding and abetting the unlawful entry of another person into the United States carries a maximum carceral sentence of six months, making it both a petty offense and a Class B misdemeanor. 8 U.S.C. § 1325(a); 18 U.S.C. §§ 19, 3559(a)(7). Congress has not authorized post-incarceration supervised release for petty offenses. 18 U.S.C. § 3583(b)(3). Magistrate judges are empowered to adjudicate misdemeanor offenses and to revoke terms of probation imposed for such offenses. 18 U.S.C. § 3401; 28 U.S.C. § 636(a)(4). And appeals from such dispositions lie not with the courts of appeals but with the district courts. 18 U.S.C. § 3402. When this Court reviews a magistrate judge's sentence, it applies the same standards the Fifth Circuit does when it reviews a sentence imposed by this Court. 18 U.S.C. § 3742(h) (appeals lie with the district court "as though the appeal were to a court of appeals from a sentence imposed by [the] district court"). So, for legal errors like that alleged by Corrales, review is de novo. *United States v. Shabazz*, 633 F.3d 342, 344 (5th Cir. 2011).

Section 3565, entitled "Revocation of Probation," is at the heart of this dispute, so it is reproduced in full below.

(a) Continuation or Revocation.—

If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable—

(1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or

(2) revoke the sentence of probation and resentence the defendant under subchapter A.

(b) Mandatory Revocation for Possession of Controlled Substance or Firearm or Refusal To Comply With Drug Testing.—

If the defendant—

(1) possesses a controlled substance in violation of the condition set forth in section 3563(a)(3);

(2) possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of probation prohibiting the defendant from possessing a firearm;

(3) refuses to comply with drug testing, thereby violating the condition imposed by section 3563(a)(4); or

(4) as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year;

the court shall revoke the sentence of probation and resentence the defendant under subchapter A to a sentence that includes a term of imprisonment.

(c) Delayed Revocation.—

The power of the court to revoke a sentence of probation for violation of a condition of probation, and to impose another sentence, extends beyond the expiration of the term of probation for any period reasonably necessary for the adjudication of matters arising before its expiration if, prior to its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

– 6 –

The referenced subchapter A comprises Sections 3551–3559. Section 3551(b), in turn, defines the sentences authorized by subchapter A to include: "(1) a term of probation as authorized by subchapter B; (2) a fine as authorized by subchapter C; or (3) a term of imprisonment as authorized by subchapter D."

### III.

This case turns on a simple question:  Does "under subchapter A" mean "under subchapter A"?  To ask the question is pretty much to answer it, but even if "under subchapter A" means something other than what it says, the magistrate judge's sentence is independently authorized as a continuation of Corrales's original term of probation.

### A.

Corrales argues that a term of probation is never authorized when a judge revokes a prior term of probation, making his eight-month term of probation illegal.  In support, he relies chiefly on the Supreme Court's opinion in *United States v. Granderson*, 511 U.S. 39 (1994).  But *Granderson* addressed a prior version of Section 3565.  That version differs significantly from that in force today.  As a result, the plain text of Section 3562(a)(2) controls.

### 1.

A prior version of the probation-revocation statute was much shorter and, unfortunately, murkier than that in effect today. That opacity begets the current confusion.  Specifically, the old version mandated that, if a probationer possessed illegal drugs, "the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence." 18 U.S.C. § 3565(a) (West 1988).  The term "original sentence" was undefined, leading to substantial confusion in the lower courts about what sentence had to be imposed on those who possessed illegal drugs while on probation.  *Granderson*, 511 U.S. at 42.  "One-third of the original sentence" could mean that the

– 7 –

penalty for possessing illegal drugs was one-third of the original probation sentence, which would seem incongruous with the statutory purpose of increasing penalties for drug users. *Id.* at 42. It could mean incarceration for one-third of the original possible maximum term of incarceration. *Id.* at 42–43. Or it could mean incarceration for one-third of the probation sentence, even if that meant imposing a sentence in excess of the original statutory maximum. *Id.* at 43.

The Supreme Court took the middle path—that the mandatory revocation provision required imposition of a term of imprisonment equal to one-third of the maximum term available at the original sentencing. Despite the intuitive appeal of the first and third paths, the middle avoided the moral hazards posed by the first and the potential illegalities posted by the third. To get there, though, the Court had to accept the government's argument that a "revocation" cannot be a "continuation"—that the two are mutually exclusive. *Id.* at 45. And it did: "[T]he contrast in subsections (1) and (2) between 'continu[ing]' and 'revok[ing]' probation suggests that a revocation sentence must be a sentence of imprisonment, not a continuation of probation." *Id.* "Otherwise the proviso at issue would make little sense." *Id.*

### 2.

The government's brief in this Court consists of a concession that, although it is not controlling in light of subsequent congressional amendments, *Granderson* is persuasive authority that requires vacatur. This is not what the government argued below. *See* APPX057. Regardless, the parties now agree that the reasoning of *Granderson* controls this case despite later amendments—that although the text is now free of the confusing "original sentence" provision and (a)(2) now authorizes resentencing "under subchapter A," that language excludes subchapter A's first option of a probationary term.

But "litigants cannot bind [the Court] to an erroneous interpretation of federal legislation." *NASA v. Federal Labor Relations Authority*, 527 U.S. 229, 245 n.9 (1999).  And, as explained below, the parties' interpretation is indeed erroneous.  Congress has made substantial changes to the revocation statute, changes that render *Granderson*'s reasoning unsound.  While *Granderson*'s reasoning that a "continuation" is not a "revocation" may be vital to its holding, as Corrales argues, equally vital to that holding—and all of the reasoning supporting it—is the reality that a plain-text reading of "original sentence" would have led to "absurd" results, as the Court recognized. 511 U.S. at 45.  The plain-text understanding of "original sentence" would have led to an utterly implausible result, so the Court disregarded the plain reading.  As Corrales conceded below, Congress eliminated any possibility of absurdity in the wake of *Granderson* by substantially revising subsection (b).  APPX037–038.  Without a reason to contort the text of Congress's response to *Granderson*, this Court can do little else but apply it.

And that text is clear.  Subsection (a)(2) says "resentence under subchapter A."  Subchapter A includes probation.  *See United States v. Wooley*, 740 F.3d 359, 364 n.3 (5th Cir. 2014) ("[T]he statute governing revocation of probation, 18 U.S.C. § 3565(a)(2), expressly directs federal courts to 'resentence the defendant under subchapter A.'  Subchapter A allows courts to impose sentences of probation, a fine, or a 'term of imprisonment as authorized by subchapter D.'").  The version of (a)(2) at issue in *Granderson*, meanwhile, said something different.  That version required courts to "revoke the sentence of probation and impose *any other* sentence that was available under subchapter A at the time of the initial sentencing."  18 U.S.C. § 3565(a)(2) (West 1988) (emphasis added).  The juxtaposition in that version of "probation" with "any other sentence" implies that the revocation sentence imposed needed to be one "other" than "probation."  Of course, the modern version of (a)(2) says nothing about

– 9 –

"other" sentences—it says only to "resentence the defendant under subchapter A."

Corrales's reading also forecloses the imposition of both additional probation and a fine (another sentence authorized "under subchapter A") in response to a violation—a judge is forced to choose one or the other. He is not to be blamed for this, though. *Granderson* also read the possibility of a fine out of the statute when it said that "a revocation sentence must be a term of imprisonment." 511 U.S. at 45. In the context of the question *Granderson* answered, that statement makes sense: when trying to decipher what Congress meant by "the original sentence," it would have been peculiar to convert a sentence of years and days into one of dollars and cents. Justice Scalia noted the problems posed by "comparing the incomparable," but unlike the majority, he preferred to apply the provision as written and read "original sentence" to mean exactly what it said and nothing more. *Id.* at 57–60 (Scalia, J., concurring in the judgment). In his view, if a defendant was sentenced to 60 months of probation and a $3,000 fine, the minimum sentence to be imposed under the mandatory-revocation provision was 20 months of probation and a $1,000 fine, even if the probationer violated on the first day of his probation and had paid none of his original fine. *Id.* at 58–59.

But the elision of fines by Corrales and the *Granderson* majority underscore the conclusion that *Granderson* cannot control this case. Described as "wretchedly drafted," *id.* at 60 (Scalia, J., concurring in the judgment), and "far from transparent," *id.* at 67 (Kennedy, J., concurring in the judgment), the original-sentence provision drove *Granderson*'s analysis from start to finish. Only by reading "revoke" to mean "incarcerate" could the *Granderson* Court avoid the moral hazards that a plain-text interpretation would have created. When Congress excised the root of the interpretive problem from the statute in 1994, it took *Granderson*'s collateral damage with it.

Other courts recognize that (a)(2)'s expansive language is meant to confer broad discretion on the sentencing court. For example, the Eighth Circuit explained: "In 1994 . . . Congress amended the statute to empower a court more generally to 'resentence the defendant under subchapter A.' Subchapter A contains the general statutory provisions for imposing a sentence, and we believe that in amending the statute Congress intended to broaden a sentencing court's power by allowing it simply to resentence probation violators under that subchapter." *United States v. Tschebaum*, 306 F.3d 540, 543–44 (8th Cir. 2002) (cleaned up). And in *United States v. Schaefer* the Fourth Circuit wrote that the post-Granderson version of Section 3565(a)(2) "plainly permits a district court to begin the sentencing process anew and to impose any sentence appropriate under the provisions of subchapter A." 120 F.3d 505, 507 (1997). Thus, the plain text of (a)(2) authorizes any sentence—fines, probation, or imprisonment—under subchapter A. That is enough to resolve this case but, since the statute goes on, the Court will too.

### 3.

The remainder of Section 3565 confirms that probation is permitted after revocation.

Take subsection (b), the mandatory-revocation provision. *Granderson* was, as Corrales recognizes, a case about the original mandatory-revocation language, which required that not less than one-third of the "original sentence" be imposed for certain violations. Seeking to avoid the absurdities that *Granderson* identified, Congress substantially amended subsection (b) to include a version of the mandatory-revocation provision that *Granderson* interpreted. *Compare Granderson*, 511 U.S. 39 (decided March 22, 1994) *with* Pub. L. 103-322, § 110506, 108 Stat. 1796, 2017–2018 (enacted Sept. 13, 1994). The mandatory-revocation provision now found in subsection (b) requires courts to revoke probation and "resentence the defendant under subchapter A *to a sentence that includes a term of imprisonment*" if a defendant possesses a

– 11 –

firearm or commits certain drug-related violations.  § 3565(b) (emphasis added).  Fully apprised, then, of the Court's interpretation of the statute, Congress added language commanding imprisonment to subsection (b) but not subsection (a)(2).

Nevertheless, Corrales would read "to a sentence that includes a term of imprisonment" into subsection (a)(2).  But "[i]t is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'"  *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94 (2012)).  When Congress wants to rule out probation and require incarceration, it does so in express language—language found nowhere in (a)(2).  "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."  *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019) (quoting *Dep't of Homeland Security v. MacLean*, 574 U.S. 383, 391 (2015)).  If Corrales is correct that *Granderson* continues to control, the limiting language in subsection (b) does no work because "a revocation sentence must be a term of imprisonment."  *Granderson*, 539 U.S. at 45.  But the only inference one can reasonably draw from the limiting language of subsection (b) is that not all revocations must result in imprisonment.  Corrales asks the Court to breach its "duty to respect not only what Congress wrote but, as importantly, what it didn't write."  *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1900 (2019).

Or perhaps Corrales asks the court to vary the meaning of "under subchapter A" through Section 3565 so that in some places, such as subsection (b), it means "under subchapter A," but in others, such as in (a)(2), it means "under subchapter A but not fines or probation."  But "'[i]n all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning' across a statute."  *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) (quoting *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1512 (2019)); *Azar v. Alina Health*

– 12 –

*Servs.*, 139 S. Ct. 1804, 1812 (2019) ("This Court does not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes.").  Regardless of which error Corrales asks the Court to adopt the result is the same: There is no reason to read revocation under (a)(2) as mutually exclusive with a term of probation where Congress has elsewhere expressly eliminated the possibility of probation.

The delayed-revocation provision found in Section 3565(c) further confirms that probation is permitted following a revocation.  "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)).  Reading (a)(2) as Corrales does, however, would require a term of imprisonment or a fine for all delayed revocations despite nothing in the statute indicating that Congress wanted to remove probation as an option for delayed revocations.  After all, subsection (c) speaks of revoking probation—not continuing it—and if Corrales is correct, probation is never permitted after a revocation regardless of the underlying violation.

But, as far as the Court can tell, no court has ever held that subsection (c) acts as a restraint on a court's discretion when adjudicating those violations.  Instead, courts uniformly recognize that the delayed-revocation statute is jurisdictional and jurisdictional alone.  Take the Ninth Circuit's opinion in *United States. v. Pocklington* as an example: "We conclude that the plain language limiting the 'power of the court' sets out a jurisdictional rule.  Because the government did not comply with the statute's strictures, the district court did not have the power to extend retroactively and later revoke Pocklington's probation." 792 F.3d 1036, 1039 (2015); *see also United States v. Block*, 927 F.3d 978, 982–85 (7th Cir. 2019) (reaching the same conclusion for the supervised-release counterpart, Section 3583(*i*)); *United States v. Merlino*,

– 13 –

785 F.3d 79, 81 (3d Cir. 2015) (same); *United States v. Janvier*, 599 F.3d 264, 267–79 (2d Cir. 2010) (same); *United States v. Madden*, 515 F.3d 601, 608 (6th Cir. 2008) (same); *United States v. Hacker*, 450 F.3d 809, 814–16 (8th Cir. 2006) (same); *United States v. Naranjo*, 259 F.3d 379, 383 (5th Cir. 2001) (same).

The commonsense conclusion that a provision speaking only to the power of the court affects only the court's jurisdiction follows from the nonsensical results that Corrales's view would create. Consider a probationer who leaves the district without permission—in violation of the terms of her probation—just before her one-year term of probation is set to expire. That violation is not subject to the mandatory-imprisonment provisions of subsection (b). Under Corrales's reading, though, any violation adjudicated after the expiration of the original term cannot include probation, even if the defendant has served nowhere close to the maximum term of probation authorized by the statute. On Corrales's reading, our hypothetical defendant must be sent to prison for her violation.

But liberty inspires an "instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." Henry J. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes*, in *Benchmarks* 209 (1967). Since *Granderson*, Congress has singled out some violations for mandatory incarceration but not others. "Statutes should be interpreted 'as a symmetrical and coherent regulatory scheme.'" *Mellouli v. Lynch*, 575 U.S. 798, 809 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Adhering to *Granderson*'s interpretation despite the changed language would mandate incarceration for those other violations. Such a reading would not only render the statute incoherent but violate both the rule that "penal laws are to be construed strictly" and "the plain principle that the power of punishment is vested in the legislative, not in the judicial department." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.).

And lest anyone think that imprisonment is not required because a fine is an option: As the Court has already explained, that is not what *Granderson* said. The line in *Granderson* that Corrales seizes upon is "a revocation sentence must be a term of imprisonment." 511 U.S. at 45. As Justice Scalia made clear, that interpretation made as much sense then as it does today. But if *Granderson* still controls, prison is the only option for our hypothetical violator. Even if fines are an option, that is cold comfort to a defendant and does little to avoid the structural constitutional concerns posed by Corrales's interpretation.

Reading "revocation" to preclude probation poses other constitutional concerns, too: Why should the Court's docket determine the sentence it imposes? In Corrales's system, a court that can immediately address a violation has options, while one that cannot hold a hearing before the expiration of the original term of probation is required to impose a sentence of imprisonment or a fine. Surely equal protection requires that something as unpredictable as the Court's schedule play no part in a defendant's sentence.

### 4.

Permitting probation after revocation, Corrales argues, renders the continuation provision in subsection (a)(1) superfluous. Not so: Subsection (a)(1) codifies a district court's discretion to take no action in the face of a violation and empowers courts to modify probation as necessary. This makes sense, as a court often issues a warrant or summons for a violation with only one side of the story. After a full hearing (as the statute requires), a court may determine that no action is necessary.

To be sure, reading (a)(2) to authorize probation following revocation might introduce some redundancy. But "[t]he canon against surplusage is not an absolute rule." *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013). "If one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy, that difference in the two

interpretations can supply a clue as to the better interpretation of a statute. But only a clue. Sometimes the better overall reading of the statute contains some redundancy." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019). For the reasons stated above, this is just such a case.

None of Corrales's other counterarguments persuades.

First, reading (a)(2) to authorize further probation vitiates none of the independent limits on a Court's sentencing authority, just as the magistrate judge could not have sentenced Corrales to an additional six-month term of imprisonment following his revocation.

Second, Corrales points to the Sentencing Guidelines' language about looking to the "range of imprisonment" set forth elsewhere in the Guidelines when a Court intends to "revoke probation." U.S.S.G. § 7B1.3(a)(2). For starters, the Sentencing Commission's interpretations cannot change the plain meaning of Congressional enactments. Even if they could, nothing about looking to the "range of imprisonment" means further probation is impermissible.

Third, the "very specific rules and limits for continuing probation" under (a)(1) that Corrales mentions are nowhere to be found in the text—(a)(1) reads, in its entirety, "continue him on probation, with or without extending the term or modifying or enlarging the conditions." And, as explained above, none of the other provisions governing maximum terms of probation are limited by permitting probation after revocation.

Fourth, Corrales contends that he has "paid the worst price the system could extract from him for violating probation conditions." Again, the meaning of a statute is not governed by any one application, but the magistrate judge could have revoked his probation and imposed a fine, for example—a punishment more severe than that Corrales advocates for here (time served). And, as Corrales concedes on page twenty-three of his opening brief, another defendant who completed four years and 364 days of her

term of probation could be incarcerated for six months for a violation, far more than Corrales has served.

Fifth and finally, Corrales argues with unclean hands that the magistrate judge's imposition of further probation is an attempt to "work around" Congress's decision not to authorize supervised release following petty offenses.  But the magistrate judge never imposed a sentence of imprisonment.  Corrales is the only person responsible for his time passed in custody.  If further probation feels like supervised release, it is not because of anything the magistrate judge did or wanted.

\*         \*         \*

In sum, *Granderson* reached a strained reading of a prior version of Section 3565 to avoid the absurdity that a more straightforward reading would create.  Congress solved the problems *Granderson* identified, and the version of Section 3565 the Supreme Court interpreted then bears little resemblance to that in effect today.  The modern version of (a)(2) unambiguously authorizes a term of probation following revocation because of its plain text, the omission of limiting language found elsewhere in the statute, and the consequences of Corrales's alternative understanding.  His revocation sentence of eight months' probation was therefore authorized by Section 3565(a)(2).

## B.

While the parties agree that subsection (a)(2) precludes the imposition of probation after revocation, they disagree about what the magistrate judge would be empowered to do on remand.  Corrales argues that the only possible consequence the magistrate judge can impose is a time-served sentence of imprisonment.  The government, on the other hand, argues that the magistrate judge can impose the same eight-month sentence by continuing Corrales's probation under subsection (a)(1) thanks to the fugitive-tolling doctrine.  As explained above, the parties' understanding of subsection (a)(2) is incorrect, so neither

– 17 –

proposed remedy is necessary.  Nevertheless, both sides agree that issue of the fugitive-tolling doctrine would arise on remand and, inevitably, on appeal to this Court.  APPX041–046.  Indeed, Corrales's reply brief explaining why his remedy is correct turns on whether the fugitive-tolling doctrine applies to a term of probation.  It does, so even if a sentence under (a)(1) were required on remand, the magistrate judge could reimpose the same eight-month probationary sentence.

1.

Although the passage of time is inevitable, a defendant's service of his sentence is not.  Recognizing that unfortunate reality, courts have long precluded a defendant from receiving credit towards his sentence for time passed as an escapee—a logical outgrowth of the fundamental principle that no man may benefit from his own wrongdoing.  *See, e.g.*, *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959).  This principle has been extended to other consequences of flight, too.  Statues of limitations are tolled for fugitives.  18 U.S.C. § 3290.  And an escapee may have his appeal dismissed to punish him, deter others, and avoid procedural complications his flight introduces.  *See, e.g.*, *Allen v. Georgia,* 166 U.S. 138, 141 (1897); *Estelle v. Dorrough,* 420 U.S. 534, 537–38 & n.7 (1975); *see generally Ortega-Rodriguez v. United States,* 507 U.S. 234, 239 (1993).  Undergirding all of this is the notion that one cannot justly seek the benefit of a system whose authority he flouts.

The rule barring defendants from receiving credit for time spent on the run—known as the fugitive-tolling doctrine—found earliest and easiest application against those who escaped from prison.  *Anderson v. Corall*, 263 U.S. 193, 195–97 (1923) (citing *Dolan's Case*, 101 Mass. 219, 222 (1869) and *In re Moebus*, 73 N.H. 350 (1905)); *Theriault v. Peek,* 406 F.2d 117, 117 (5th Cir. 1968) ("Escape from prison interrupts service, and the time elapsing between escape and retaking contribute[s] nothing to the service of the sentence.").  And although the criminal justice

– 18 –

system has moved away from the custody-or-freedom binary and incorporated various forms of conditional release, the fugitive-tolling doctrine has been constant. The doctrine was uniformly applied to parolees before the abolition of parole in 1987. *See, e.g.*, *Anderson,* 263 U.S. at 196; *Caballery v. United States Parole Comm'n,* 673 F.2d 43, 46 (2d Cir. 1982); *Suggs v. Daggett*, 522 F.2d 396 (10th Cir. 1975); *United States v. Martin,* 786 F.2d 974, 975 (10th Cir. 1986); *Nicholas v. United States,* 527 F.2d 1160, 1162 (9th Cir. 1976); *cf.* Sentencing Reform Act of 1984, Pub. L. No. 98–473, tit. II, ch. II, 98 Stat. 1987 (effective Nov. 1, 1987). And even after Congress replaced parole with supervised release, the Fifth Circuit continued to apply the fugitive-tolling doctrine to probationers. *See United States v. Fisher*, 895 F.2d 208, 212 (5th Cir. 1990).

Faithful to this uninterrupted adherence to an equitable rule, the Fifth Circuit recently joined four other circuits in holding that the fugitive-tolling doctrine applies to terms of supervised release—parole's successor in the federal system. *United States v. Cartagena-Lopez*, 979 F.3d 356, 359 & n.1 (2020) (citing *United States v. Barinas,* 865 F.3d 99 (2d Cir. 2017); *United States v. Island,* 916 F.3d 249 (3d Cir. 2019); *United States v. Buchanan,* 638 F.3d 448 (4th Cir. 2011); and *United States v. Murguia-Oliveros,* 421 F.3d 951 (9th Cir. 2005)). In *Cartagena-Lopez*, a defendant was sentenced to a three-year term of supervised release after a term of imprisonment. After a few months, he fled, so a warrant was issued for his arrest. It was not until after the three-year term expired that he was discovered and taken before the sentencing court to answer for his flight. By that point, Cartagena-Lopez had committed other violations of his supervised release. In addition to his original flight, those new violations were adjudicated against him at his revocation hearing. He appealed his revocation on the later violations, arguing that because his term of supervised release expired before a warrant or summons was issued for those violations, the district court lacked jurisdiction over the violations. 979 F.3d at 359–60.

– 19 –

In concluding that the fugitive-tolling doctrine applies to supervised release, the Fifth Circuit looked to two statutes.  Section 3583(*i*) "extends" the "power of the court to revoke a term of supervised release" "beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration" if a warrant for those violations issued "before its expiration."  Meanwhile, Section 3624(e) governs how a defendant receives credit towards his term of supervised release if he is in custody for other charges: "A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."

Section 3583(*i*), the Fifth Circuit concluded, was of little value in answering whether an equitable doctrine applies.  Because it "extends the district court's power to revoke" rather than "actually extend the end date of the defendant's supervised release term," it "provides no guidance" on "whether and when a term can be tolled."  979 F.3d at 361.

Section 3624(e), on the other hand, formed the basis of the First Circuit's conclusion that the fugitive-tolling doctrine could not apply to terms of supervised release.  *United States v. Hernandez-Ferrer*, 599 F.3d 63, 67–68 (1st Cir. 2010).  The First Circuit—which is alone in its view—concluded that the inclusion of one form of tolling in the statutes governing supervised release meant that all others—equitable or otherwise—were excluded.  *Id.*  The Fifth Circuit disagreed with that understanding.  Because Section 3624(e) governs "how contemporaneous sentences interact with supervised release" and is not simply a "standalone tolling provision," the provision is best understood as using "tolling as a means, not an end."  *Cartagena-Lopez*, 979 F.3d at 362.  Thus, the text of Section 3624(e) did not foreclose by omission the application of the fugitive-tolling doctrine.

Having concluded that the text did not foreclose the doctrine, the Fifth Circuit looked to the unbroken history of applying the doctrine in analogous circumstances and the policy arguments in favor of the doctrine to conclude that Congress did not intend to displace the common law when it enacted Sections 3583(*i*) and 3624(e).  *Id.* at 362–63.  And since it was neither precluded nor displaced, Cartagena-Lopez's supervised release was tolled for the duration of his flight, meaning he was still within that term when the district court adjudicated his later violations.  *Id.* at 363–64.

2.

But what do all these cases about supervised release have to do with this case about probation?  The statutes at issue in *Cartagena-Lopez* and *Hernandez-Ferrer* are identical in all material respects to those governing probation.  Section 3583(*i*)'s counterpart is the delayed-revocation provision found in Section 3565(c), while Section 3624(e)'s is found in Section 3564(b).  Since the language is the same, the result should be, too.

And it is.  Start with the *expressio unius* argument.  Part of the First Circuit's analysis turned on the fact that Congress codified only some of the preexisting doctrines related to tolling—"the only rational conclusion that we can draw from this selective codification of prior case law is that Congress intended a term of supervised release to be tolled only by reason of immurement."  *Hernandez-Ferrer*, 599 F.3d at 68–69.  But the First Circuit errs at the outset.  Congress did not, in enacting Sections 3564(b) and 3624(e), merely incorporate preexisting caselaw—it modified it.  Prior caselaw uniformly held that imprisonment, regardless of duration, tolled a period of probation.  *See, e.g.*, *Nicholas*, 527 F.2d at 1162 (collecting authorities).  Congress rejected the blanket equitable rule courts had constructed and substituted a more nuanced rule: sentences less than thirty days did not stop the clock.  Properly understood, then, the tolling provisions

– 21 –

reflect not a "selective codification of prior case law," but a refinement of it.

With that context, the First Circuit's *expressio unius* theory falls apart. "'[I]n order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law.'" *United States v. Bestfoods*, 524 U.S. 51, 63 (1998) (quoting *United States v. Texas*, 507 U.S. 529, 534 (1993)). Nothing about rejecting *A* by enacting *A′* says anything about *B* or *C*. "Part of a fair reading of statutory text is recognizing that 'Congress legislates against the backdrop' of certain unexpressed presumptions." *Bond v. United States*, 572 U.S. 844, 857 (2014) (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)). "The notion that some things 'go without saying' applies to legislation just as it does to everyday life." *Id.* If Congress wanted to reject *B* and *C*, it could have said "only *A*." But without any evidence that Congress intended to displace any other form of tolling when it enacted the 30-days-or-fewer refinement, the Court concludes that the fugitive-tolling doctrine is not barred by Section 3564(b). After all, Congress does not hide elephants in mouseholes. *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

If that were not enough, as *Cartagena-Lopez* recognized, a statute's context and purpose inform the text's meaning. 979 F.3d at 363. And the case for applying the fugitive-tolling doctrine to those on probation is even stronger than those on supervised release. Unlike supervised release, which is imposed in addition to a carceral sentence, a court imposes probation in lieu of a carceral sentence: By absconding from supervision, a probationer avoids any consequence for his actions. He is no different from an escapee, the paradigmatic case for applying the fugitive-tolling doctrine. Supervised release, on the other hand, aims to facilitate a defendant's reintegration—to get him back on his feet. A fleeing defendant needs no help in that department.

– 22 –

Recognize, too, that the delayed-revocation provision found in Section 3565(c) is irrelevant to this analysis, just as Section 3583(*i*) was in *Cartagena-Lopez*. Not all revocations are predicated on a defendant's flight. When a defendant violates her probation the day before it is set to expire, the delayed-revocation statute empowers a judge to address the violation even though the term has expired. But, again, those who flee are a different species of offender; they completely defeat the purpose of probation: to ensure that the defendant's underlying criminal conduct was aberrational. Indeed, the fugitive-dismissal rule—that a fugitive may not pursue an appeal—has been applied to bar appeals by escapees but not those by defendants who merely fail to report to their probation officer, recognizing a categorical difference between those who violate and those who abscond entirely. *See, e.g.*, *United States v. Gonzalez*, 300 F.3d 1048, 1051 (9th Cir. 2002). Look again to the paradigmatic case of an escaped inmate: An inmate who violates prison rules can lose good-time credit, but he will never serve more time than his original sentence; an inmate who escapes, on the other hand, rightly gets no credit for his time on the run. So too here.

### 3.

Corrales makes a fair argument that, since he has served more than six months in custody, there are few "sticks," in his words, to ensure compliance. One stick—the biggest one—has been removed, but a panoply of others remains. Warrants can issue for his arrest regardless of whether he can serve a sentence of custody, for example. Additionally, there are sentencing enhancements applicable to those who commit crimes while on probation. More importantly, though, even if there were no sticks left, it was not for Corrales to decide whether to serve time in custody. The magistrate judge imposed a sentence of probation—a sentence that, as explained above, Corrales did not fulfil. And, in any event, whether the fugitive-tolling doctrine is

– 23 –

authorized under the statute is a legal question whose answer is independent of any particular application.

Finally, some defendants might rationally choose incarceration over probation. Say a defendant charged with a petty offense spends two months in custody before he is sentenced. The maximum term of imprisonment he faces at sentencing is six months—or four more months. But the defendant still faces five years of probation. And if he should violate the terms of his probation, he still faces the four additional months. Since supervised release is not authorized, a rational defendant might prefer to get the four months over with and avoid the probation officer's oversight. But that is not the defendant's choice to make, and he may not accomplish through unlawful means what he cannot accomplish through lawful means. When the First Circuit adopted its contrary conclusion and held that the fugitive-tolling doctrine does not apply to supervised release, it did so in part because "a judicially contrived tolling mechanism is not necessary to deter offenders from absconding." *Hernandez-Ferrer*, 599 F.3d at 69. Corrales's case disproves that hypothesis: Corrales did not like his sentence, so he chose another one.

*          *          *

*Cartagena-Lopez* opened with a recognition that the Fifth Circuit has "applied the fugitive-tolling doctrine to defendants who escaped from prison *and absconded from probation*." 979 F.3d at 360 (emphasis added) (citing *Fisher*, 895 F.2d at 212). *Fisher* may well be good law despite subsequent revisions to the probation statutes. That alone would be decisive. But if it is not, the conclusion that the doctrine applies to the modern probation statutes is compelled by all of *Cartagena-Lopez*'s reasoning. The fugitive-tolling doctrine is fully consistent with both the text and purpose of the probation statutes. Congress gave no indication that it intended to displace longstanding equitable rules when it added the 30-days-or-fewer rule to the probation statutes. And absent such an indication, the doctrine survives. Because the fugitive-tolling

– 24 –

doctrine applies to terms of probation, the magistrate judge was empowered to address Corrales's violation a continuation under subsection (a)(1). As a result, the eight-month term of probation imposed is lawful regardless of whether a term of probation is permitted following revocation under subsection (a)(2).

If a reformation of the judgment would be necessary to accomplish this result, the Court would exercise its discretion to do so here. A "court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review." 28 U.S.C. § 2106. Reforming the judgment at this point—rather than vacating and remanding—would preserve judicial resources and avoid the need for Corrales to return to Texas if his presence would be necessary for further proceedings. *See United States v. Lara-Garcia*, No. 15-40108, 2021 WL 5272211, at *2 (5th Cir. Nov. 11, 2021) (considering the waste of judicial resources imposed by a remand). Moreover, there would be little risk of confusion from this Court's entry of a reformed judgment given that this case involves not a primary sentence, but a penalty for noncompliance with a condition of probation, and that, in this case, a district court is reviewing a magistrate judge's sentence. *Compare United States v. Fuentes-Rodriguez*, 22 F.4th 504, 506 (5th Cir. 2022) (remanding so that the district court could enter a reformed judgment "due to the frequent use of district court judgments *of conviction*" (emphasis added)) *with United States v. Trujilo*, 4 F.4th 287, 291 (5th Cir. 2021) ("We will not order remand simply because [the defendant] hopes to create a better appellate record."). That conclusion is bolstered by the reality that Corrales has already served half of the eight-month term. Finally, the Fifth Circuit has "opted for reformation rather than vacatur when the defendant fails to show that the mistake affected the defendant's sentence." *Lara-Garcia*, 2021 WL 5272211, at *2 (citing *Trujilo*, 4 F.4th at 291; *United States v. Mondragon-Santiago*, 564 F.3d 357, 369 (5th Cir. 2009)). That is doubly the case here, for the sentence is lawful under both (a)(1) and (a)(2).

– 25 –

IV.

Corrales does not contend that the new term of probation was otherwise in excess of the statutory maximum, nor does he contend that it was substantively unreasonable or imposed with some procedural defect.  He gestured at reasonableness arguments below, APPX046–047, but "in order to preserve an argument for appeal, the argument (or issue) not only must have been presented in the district court, a litigant also 'must press and not merely intimate the argument during proceedings before the district court.'"  *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994)).  Corrales did not object on reasonableness grounds at the time of sentencing, nor does he challenge the sentence's reasonableness in his briefs to this Court, so any such challenge is waived.  Even if he had objected, an eight-month term of probation was eminently reasonable given that Corrales served none of his original six-month term.  Indeed, Corrales's counsel indicated that Corrales was not opposed to ongoing supervision of some sort.  APPX024.

\*          \*          \*

The magistrate judge sentenced Corrales to six months of probation.  That is the sentence from which he fled.  And that is the sentence he now seeks—through his flight—to avoid.  But Section 3565(a)(2) authorizes the reimposition of a term of probation following a revocation.  Even if it does not, Corrales never completed his original term of probation, so the magistrate judge was authorized to continue his probation.  Since the sentence was lawful and Corrales complains of no other defects, the judgment is

*AFFIRMED.*

July 25, 2022

– 26 –